IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CV-40-D

| | | |
|---|---|---|
| CHRISANNA LAMB, for J.P., a minor, | ) ) ) | |
| Plaintiff, | ) ) ) | **ORDER** |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

On August 16, 2011, Chrisanna Lamb ("Lamb" or "plaintiff"), on behalf of J.P., her minor child, filed a complaint under 42 U.S.C. § 405(g) seeking review of Michael J. Astrue's ("Commissioner" or "defendant") denial of J.P.'s application for supplemental security income ("benefits") [D.E. 1]. On February 16, 2012, Lamb filed a motion for judgment on the pleadings [D.E. 31] and a supporting memorandum [D.E. 32]. On April 13, 2012, the Commissioner filed a motion for judgment on the pleadings [D.E. 33] and a supporting memorandum [D.E. 34]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies Lamb's motion for judgment on the pleadings, and affirms the Commissioner's final decision.

I.

An individual under the age of 18 will be considered disabled under the Social Security Act if he or she suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(i). An Administrative Law Judge ("ALJ") must follow a three-step process to determine whether an individual under the age of 18 is disabled. An ALJ must consider whether the individual (1) is engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; and (3) has an impairment or combination of impairments that meets, medically equals, or functionally equals the requirements of a listed impairment. 20 C.F.R. § 416.924(a). Thus, the ALJ may find an individual under the age of 18 disabled only upon a finding that the individual has a severe impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment. Id. § 416.924(d).

In order to determine whether the impairments of an individual under the age of 18 functionally equal a listed impairment, the ALJ evaluates the individual's functional limitations in each of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1)(i)–(vi). An individual under the age of 18 is disabled if he or she has an impairment or impairments of "listing-level severity" that result in an "extreme" limitation in one domain or a "marked" limitations in two or more domains. Id. § 416.926a(a). A "marked" limitation in a domain is found when an impairment interferes "seriously" with the individual's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(2). An "extreme" limitation in a domain is found when the impairment interferes "very seriously" with the individual's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3).

On July 3, 2008, Lamb applied for benefits on behalf of J.P., her minor child, alleging that J.P. became disabled on July 3, 2008, due to attention deficit hyperactivity disorder ("ADHD"),

2

speech problems, and sleep disorder. Tr. [D.E. 12–27] 104–06, 116–25. J.P.'s application was denied initially and upon reconsideration, and Lamb timely requested a hearing. Id. 44–47, 52–63. On August 19, 2010, an ALJ held a hearing regarding J.P.'s application. Id. 23–41, 64. On September 14, 2010, the ALJ issued a decision denying J.P.'s application. Id. 4–22. On September 21, 2010, Lamb timely requested review. Id. 98–99. On July 20, 2011, the Appeals Council denied Lamb's request for review. Id. at 1–3.

The ALJ followed the three-step process in J.P.'s case. At step one, the ALJ found that J.P. had not engaged in substantial gainful activity since July 3, 2008. Id. 10. At step two, the ALJ found that J.P. suffered from severe medically determinable impairments, including ADHD and speech and language delays. Id. At step three, the ALJ found that J.P.'s impairments did not meet, medically equal, or functionally equal any of the listings. Id. Accordingly, the ALJ found that J.P. was not disabled during the relevant period and was thus not entitled to benefits. Id. 18.

In a section 405(g) action, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. 416.927(d)(2); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), abrogated by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained

3

the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

In support of her motion for judgment on the pleadings, Lamb contends that the ALJ erred in finding that J.P. has less than marked limitation in the domains "interacting and relating with others"[1] and "caring for yourself."[2] See Pl.'s Mem. Supp. Mot. J. Pleadings [D.E. 32] 12–17. As

---

[1] The domain "interacting and relating with others" provides that:

> In this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

20 C.F.R. § 416.926a(i); see also id. § 416.926a(i)(1)(i)–(iv) (further describing terms). For preschool age children (age 3 to attainment of age 6), such as J.P., the domain provides that:

> At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

Id. § 416.926a(i)(2)(iii); see also id. § 416.926a(i)(3) (providing examples).

[2] The domain "caring for yourself" provides that:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

20 C.F.R. § 416.926a(k); see also id. § 416.926a(k)(1)(i)–(iv) (further describing terms). For

4

for the domain "interacting and relating with others," Lamb argues that the ALJ's stated reason for his finding—that J.P. had exhibited inappropriate behavior only in the home and not also at school—was both factually and legally incorrect and failed to take into account significant favorable evidence. See id. 12–14. As for the domain "caring for yourself," Lamb argues that the ALJ erroneously relied on a January 2009 report which indicated that J.P. had improved significantly because such improvement had only been temporary and the ALJ failed to take into account significant favorable evidence from after that date. See id. 14–17. The Commissioner responds that the ALJ in fact provided an appropriate general explanation of why he did not find J.P.'s limitations to be as intractable as alleged, as well as more specific explanations as to why he found J.P.'s limitations in the domains "interacting and relating with others" and "caring for yourself" to be less than marked. See Def.'s Mem. Supp. Mot. J. Pleadings [D.E. 34] 15–25. The Commissioner notes that the ALJ's narrative discussion shows that he concluded that J.P.'s limitations were less intractable than alleged because his ADHD was responsive to treatment and, in so finding, clearly considered ample evidence in the record. See id.

The court agrees with the Commissioner. The ALJ's conclusions that J.P. had less than marked limitation in the domains "interacting and relating with others" and "caring for yourself"

preschool age children, the domain provides that:

> You should want to take care of many of your physical needs by yourself (e.g., putting on your shoes, getting a snack), and also want to try doing some things that you cannot do fully (e.g., tying your shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for you to agree to do what your caregiver asks. Later, that may be difficult for you because you want to do things your way or not at all. These changes usually mean that you are more confident about your ideas and what you are able to do. You should also begin to understand how to control behaviors that are not good for you (e.g., crossing the street without an adult).

Id. § 416.926a(k)(2)(iii); see also id. § 416.926a(k)(3) (providing examples).

5

were supported by substantial evidence. See Tr. 11–13, 15–18. In finding that J.P. had less than marked limitation in the domain "interacting and relating with others," the ALJ noted that:

> The claimant's mother reported that the claimant picks on people and is mean to his siblings. She said that he was not physical with kids, just did not share and did not like to play with kids. Debbie Savage noted that it was determined that the claimant did not exhibit inappropriate behaviors in the preschool environment. The claimant exhibited severe behavioral issues in the home. He exhibited aggression, noncompliance and defiance to authority.

Id. 16. In finding that J.P. had less than marked limitation in the domain "caring for yourself," the ALJ noted that:

> In September 2008, the claimant's neurology examination indicated that he was extremely wild and violent towards himself and others. In January 2009, it was noted that he had significant improvements in his behavior with parental training.

Id. 18. In addition, more generally, the ALJ concluded that J.P.'s ADHD, although a severe impairment, was responsive to treatment with medication and psychotherapy and that J.P.'s symptoms from his ADHD were not as intractable as alleged. Id. 11–13. In making these findings, the ALJ specifically considered the following: (1) the testimony of Lamb, as J.P.'s mother, id. 28–41; (2) a February 22, 2008 evaluation by Donald Lewis, M.D., id. 253–55; (3) the May 8, 2008 and December 10, 2008 evaluations by Thomas Montgomery, M.D., id. 258–61; (4) a January 30, 2009 medical report by Debbie Savage, HSP-PA, id. 270; (5) a February 6, 2009 consultative evaluation by Richard Bing, Ph.D., id. 273–78; (6) medical records from J.P.'s primary care physicians at Carolina Pediatrics dating from February 2005 to August 2010, id. 240–50, 317–21, 327–38; and (7) an August 11, 2009 state agency childhood disability evaluation form completely by Margaret Parrish, M.D. Id. 339–44.

The ALJ's findings as to the two domains at issue were based on substantial evidence. The ALJ fully discussed each of the foregoing seven pieces of evidence. As for the evidence that Lamb

cites,[3] the ALJ considered it, but ultimately did not agree with it in light of other evidence. See id. 11-13, 15-16, 17-18. The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Finally, because the narrative explanation of evidence in his decision makes abundantly clear that the ALJ considered both favorable and unfavorable evidence with regard to J.P.'s behavior at both home and school, and dating from the time period both before and after Savage's January 2009 report, the court rejects Lamb's argument that the ALJ erred by limiting the domain "interacting and relating with others" to J.P.'s behavior at school or by relying on Savage's report. In sum, the ALJ appropriately found that J.P. has less than marked limitation in the domains "interacting and relating with others" and "caring for yourself." Thus, the court rejects Lamb's challenges to the Commissioner's final decision.

---

[3] Lamb cites (1) a March 2, 2009 teacher questionnaire which indicated that J.P. had a "serious" problem in four of thirteen categories related to this domain, id. 145; (2) a form dated April 23, 2007, from Buckland Elementary School used to evaluate J.P.'s eligibility for special needs education which answered "yes" to a question asking whether he had behaviors which impeded his performance or that of others, id. 131, stated that he often hit others to get attention and used hitting as a form of play, id. 132, and noted that he needed to learn to deal with conflicts without resorting to bullying, threatening, or being aggressive, id. 134; (3) a sentence from Dr. Montgomery's December 10, 2008 evaluation which noted that J.P.'s behavior had improved both at home and in school, id. 294; and (4) a June 10, 2009 psychological assessment prepared by G. Evans Heath, M.A., L.P.A. which indicated that Lamb reported that J.P. had significant temper tantrums, did not sleep well and resisted bedtime, was aggressive and destructive, did not avoid danger, and had to be supervised closely, id. 346, and that the practitioner indicated that J.P. put his hands around his neck to choke himself when angry and slapped himself in the face, that on the day of his initial visit he was not on his medication and was significantly hyperactive, impulsive, and resistant, that he walked on his tiptoes, that his speech was loud, monosyllabic and sometimes difficult to understand, that his affect was irritable, that his frustration tolerance was low and he was oppositional, that he had problems at home and at school, that he had a GAF of 50, indicating serious symptoms, that he had behavioral and academic problems at his preschool program for children with special needs, and that he had constant supervision requirements, id. 346-48. See Pl.'s Mem. Supp. Mot. J. Pleadings 13, 15-17.

II.

Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 33] is GRANTED, Lamb's motion for judgment on the pleadings [D.E. 31] is DENIED, and the Commissioner's final decision is AFFIRMED. The clerk shall close the case.

SO ORDERED. This 18 day of August 2012.

JAMES C. DEVER III
Chief United States District Judge